UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHAIMA CHAABANI<br><br>　　　　　　　　　　　Defendant. | Case No.: 24cr2713-WQH<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is the Motion to Resolve Conflict Issue, filed by Defendant Chaima Chaabani. ECF No. 29.

## BACKGROUND

　　On September 12, 2024, a Complaint was filed against Chaabani, Robert Stoica, and Mihai Viorel Stefan in this Court alleging Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2), and Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2). *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 1.

　　On September 24, 2024, Chaabani was arrested in the Central District of California. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 7.

　　On October 7, 2024, Chaabani made her initial appearance before a Magistrate Judge, who provisionally appointed Federal Defenders of San Diego, Inc. ("Federal Defenders") as Chaabani's counsel and entered a Pretrial Release Order as to Chaabani.

*See* S.D. Cal. Case No. 24cr2194-WQH, ECF Nos. 11, 16. Attorney Cassidy Heverling of Federal Defenders entered a special appearance on behalf of Chaabani at the initial appearance.

On October 8, 2024, Attorney Nina B. Papachristou of Federal Defenders filed her Notice of Appearance as counsel for Chaabani. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 14.

On October 17, 2024, Chaabani appeared for an arraignment on an Information before a Magistrate Judge. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 22. At the arraignment, Chaabani was represented by attorney Leila W. Morgan of Federal Defenders. *See id*. The Information charged Chaabani and Stoica with Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count One), and Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count Two). *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 21.

On November 19, 2024, Stoica pled guilty to both counts of the Information pursuant to a written Plea Agreement. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF Nos. 36, 38.

On November 25, 2024, attorney Morgan of Federal Defenders filed a Notice of Attorney Appearance on behalf of Chaabani. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 41.

On November 27, 2024, the Government filed a response to Chaabani's discovery motion, which included a section entitled "Notice of Potential Conflict." S.D. Cal. Case No. 24cr2194-WQH, ECF No. 43 at 7. The Government stated:

> During the review of STOICA's iPhone, the forensic examiner found a video whose metadata indicates that it was created on or about February 15, 2024. In the video, CHAABANI is at a restaurant and seated between STOICA and Dorin Mirel Mihailescu. On October 8, 2024, the US Secret Service obtained a Complaint charging Mihailescu and two others with Access Device Conspiracy, in violation of 18 U.S.C. § 1029(a)(2), (b)(2) (Count 1) and charging Mihailescu alone with two additional counts of Use and Attempted Use of Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(2), (b)(1) (Counts 2 and 3), *See* 24-mj-03848. Mihailescu was arrested in San Bernadino and, following his transfer and removal to the

Southern District of California, arraigned by Magistrate Judge Benjamin J. Cheeks on November 8, 2024. Judge Cheeks appointed Federal Defenders of San Diego to represent Mihailescu, who in turn appointed Roxana Sandoval to handle the matter.

Federal Defenders, through Ms. Sandoval, appeared on Mihailescu's behalf at a detention hearing on November 12, 2024, and requested a continuance that was granted, and the detention hearing was continued to November 19, 2024. On November 18, 2024, attorneys Jan E. Ronis and Gretchen Von Helms substituted in as counsel of record for Mihailescu. Retained counsel agreed to a protective order on November 21, 2024, and discovery was then provided to Mr. Ronis and Ms. Von Helms. No discovery was produced to Federal Defenders, which only received the Complaint, Affidavit, and bail report prepared by the Central District of California.

The government found the video of CHAABANI, STOICA, and Mihailescu dining together after Federal Defenders and Ms. Sandoval were substituted off Mihailescu's case. Upon learning of the video, the government contacted counsel for both CHAABANI and Mihailescu and notified them of both the video and the government's belief that Mihailescu was a recruiter/organizer who could potentially have supervised or directed CHAABANI and STOICA. The government provided both attorneys with copies of images from the video showing CHAABANI and Mihailescu seated next to each other and advised that it appeared there was a potential conflict because CHAABANI likely had information that could be used against Mihailescu, and vice-versa.

Defense counsel took the matter under consideration and ultimately advised the government that Federal Defenders had decided to wall Ms. Sandoval off from the case against CHAABANI, and to wall counsel for CHAABANI (Nina Papachristou and Leila Morgan) off from Mihailescu's case. These steps, counsel advised, coupled with the limited duration of the organization's representation of Mihailescu, addressed the potential conflict under California ethics rules.

The government defers to the Court about whether further action is required to address the potential conflict.

*Id.* at 7–8.

A review of the Court's docket shows that Dorin Mirel Mihailescu was named in a Complaint filed on October 9, 2024, in S.D. Cal. Case No. 24cr2485-BAS. At the November 8, 2024 initial appearance before a Magistrate Judge, Federal Defenders was appointed to represent Mihailescu and attorney Ryan De La Rosa of Federal Defenders entered a special appearance on behalf of Mihailescu. *See* S.D. Cal. Case No. 24cr2485-BAS, ECF No. 9. On November 12, 2024, attorney Sandoval with Federal Defender filed a Notice of Appearance on behalf of Mihailescu and appeared in court before the Magistrate Judge and requested a continuance of the detention hearing. *See* S.D. Cal. Case No. 24cr2485-BAS, ECF Nos. 12, 14. On November 18, 2024, retained counsel filed a motion to substitute attorney on behalf of Mihailescu, and the Magistrate Judge granted the motion on the same day, ending Federal Defenders' representation of Mihailescu. *See* S.D. Cal. Case No. 24cr2485-BAS, ECF Nos. 18, 19.

On December 20, 2024, an Indictment was filed in the above-captioned case, which was assigned S.D. Cal. Case No. 24cr2713-WQH, charging Chaabani with Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count One), Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count Two), and Aggravated Identity Theft (Counts 3–7). *See* S.D. Cal. Case No. 24cr2713-WQH, ECF No. 1.

On February 3, 2025, this Court held a status hearing as to Chaabani. The Court ordered that all motions should be filed in the new case, S.D. Cal. Case No. 24cr2713-WQH, and issued deadlines for various matters, including briefing on the conflict issue raised by the Government. *See* ECF No. 13.[1]

On March 11, 2025, a written Plea Agreement was lodged in Mihailescu's case, indicating that Mihailescu had agreed to plead guilty to one count of Conspiracy to Commit

---

[1] Unless otherwise notes, all future citations to the docket will be in S.D. Cal. Case No. 24cr2713-WQH.

Access Device Fraud and two counts of Use and Attempted Use of Unauthorized Access Devices. *See* S.D. Cal. Case No. 24cr2485-BAS, ECF No. 30.

On March 17, 2025, Papachristou and Morgan of Federal Defenders filed the pending Motion to Resolve Conflict Issue on behalf of Chaabani. (ECF No. 29.) The Motion states:

> The government notified Federal Defenders of the potential conflict on November 20, 2024, after Federal Defenders had already been relieved from Mr. Mihailescu's case. On that date, Federal Defenders 'walled off' Mr. Mihailescu's former appointed counsel, Roxana Sandoval, from Ms. Chaabani's case; and walled off undersigned counsel from Mr. Mihailescu's file. There has been no communication among those attorneys about either matter.

*Id*. at 2. The Motion states that "Defense counsel spoke to Ms. Von Helms on March 17, 2025 and she indicated that her client [i.e, Mihailescu], would waive the potential or actual conflict and sign an informed written consent." *Id*. The Motion states that "Ms. Chaabani has also been fully apprised of Federal Defender's prior representation of Mr. Mihailescu and also seeks to waive any potential conflict." *Id*. at 5. The Motion states:

> [N]obody disputes that the matters are substantially related, given that the government alleges Ms. Chaabani and Mr. Mihailescu were part of the same fraud conspiracy. Nor can there be any question that cross-examination of Mr. Mihailescu is materially adverse to him. However, given that Federal Defenders was relieved before any discovery was provided, or any substantive hearing (including a detention hearing) were held in the case, the screening measures put in place are sufficient to protect Mr. Mihailescu as a former client.

*Id*. at 4. The Motion states that "Ms. Chaabani respectfully requests that the court protect her interest in continuity of counsel and determine that there is no potential or actual conflict of interest regarding the ten days of Federal Defenders' concurrent representation of her and Mr. Mihailescu." *Id*. at 2–3.

On March 31, 2025, the Government filed a Response to the Motion to Resolve Conflict Issue. *See* ECF No. 33. The Government asserts its "belief that Mihailescu was a

1  recruiter/organizer who could potentially have supervised or directed Chaabani and
2  Stoica," and "it appear[s] there [i]s a potential conflict because Chaabani could have
3  information that could be used against Mihailescu, and vice-versa." *Id*. at 3. The
4  Government "defers to the Court about whether to accept a knowing and voluntary waiver
5  from Chaabani of Federal Defenders' potential conflict representing her." *Id*. at 11.

6  On April 7, 2025, the Court conducted a hearing on the Motion to Resolve Bond
7  Issue. *See* ECF No. 41. At the hearing, the Government indicated that it is undecided
8  whether Mihailescu would be called as a witness against Chaabani at trial.

9  After the hearing on April 7, 2025, Federal Defenders filed an "Informed Consent
10 Waiver," in the form of a letter "memorializ[ing] the conversations we have had about
11 FDSDI's prior representation of Dorin Mihailescu, Case No. 24-cr-02485-BAS." ECF No.
12 42 at 1. The letter states:

> As we have discussed, the government alleges that Mr. Mihailescu "was a recruiter/organizer who could have potentially supervised or directed" your involvement in the offense. Gov. Resp., Case No. 24-cr-2713-WQH, ECF No. 33 at 3. The government alleges it found a video created on February 15, 2024 that depicts you, Robert Stoica, and Dorin Mihailescu seated at a restaurant.
>
> As we have discussed, a different attorney at my firm represented Mr. Mihailescu from November 8, 2024 until November 18, 2024. That attorney did not receive any evidence ("discovery") in the case and did not appear in court for Mr. Mihailescu. Ethical screens were put in place to prevent the attorneys and staff on your case from accessing any information gained during our representation of Mr. Mihailescu.
>
> We discussed your right to receive outside legal advice about whether you should proceed with waiving a conflict of interest. We advised you that should Mr. Mihailescu be called to testify against you at trial, we will zealously cross-examine him to the best of our ability. We also advised you that other, unforeseen conflicts concerning your relationship with Mr. Mihailescu could arise at trial.
>
> FDSDI owes a duty of loyalty to former clients that prevents us from using any information gained during our representation of him. We do not

      believe we have any confidential information. Because of our extremely limited representation of Mr. Mihailescu, we do not believe there is a significant risk the former representation will materially limit our representation of you. See Cal. Rule of Prof'l Conduct 1.7(b), cmts. 8–9.

      It is our understanding that you wish to waive any prospective or potential conflict concerning our previous representation of Mr. Mihailescu. See Rule 1.7(b).

*Id*. at 1–2.

## DISCUSSION

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citing, *inter alia*, *Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel.")). "[A]n established limitation on this right" to select and be represented by one's preferred attorney is "only 'individuals who can afford to retain counsel have a qualified right to obtain counsel of their choice." *United States v. Rewald*, 889 F.2d 836, 856 (9th Cir. 1989) (quoting *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir. 1984)); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."); *Michaels v. Davis*, 51 F.4th 904, 938 (9th Cir. 2022) ("The Sixth Amendment does not guarantee the right to

appointment of a particular attorney, or the right to a meaningful relationship with that attorney.") (quotation and citations omitted).

In addition, "[a] criminal defendant has a Sixth Amendment right to a conflict-free attorney." *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998) (citation omitted). "Trial courts may allow an attorney to proceed despite a conflict if the defendant makes a voluntary, knowing, and intelligent waiver." *Id*. (quotation omitted). "Whether a defendant has made a valid waiver of his Sixth Amendment rights depends 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Id*. (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). "In making such a determination, the court must 'indulge every reasonable presumption against the waiver of fundamental rights.'" *Id*. (quoting *United States v. Allen*, 831 F.2d 1487, 1498 (9th Cir. 1987)). "[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.

"[W]e apply state law in determining matters of disqualification…." *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *see also Wheat*, 486 U.S. at 160 (relying on "the American Bar Association's Model Code of Professional Responsibility and its Model Rules of Professional Conduct, as well as the rules of the California Bar Association (which governed the attorneys in this case)," in a case arising out of this District). "Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 283 (1994). "Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." *Id*. "Where the

requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Id*. (citations omitted); *see also* Cal. R. Prof. Conduct 1.7(a) ("A lawyer shall not, without informed written consent from each affected client …, represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with … a former client…."); Cal. R. Prof. Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."); Cal. R. Prof. Conduct 1.10 (Imputation of Conflicts of Interest).

However, "California courts have generally declined to apply an automatic and inflexible rule of vicarious disqualification in the context of public law offices. Instead, in this context, courts have looked to whether the public law office has adequately protected, and will continue to adequately protect, the former client's confidences through timely, appropriate, and effective screening measures and/or structural safeguards." *In re Charlisse C.*, 45 Cal. 4th 145, 162 (2008). "Courts have also held, however, that where the attorney with the actual conflict has managerial, supervisorial, and/or policymaking responsibilities in a public law office, screening may not be sufficient to avoid vicarious disqualification of the entire office." *Id*. at 163. "[B]ecause it has unique access to the relevant information," "the burden is on [the public law office] to show that, through timely, appropriate, and effective screening measures and/or structural safeguards, the confidential information acquired during [the public law office]'s prior representation of [the former client] has been, and will be, adequately protected during [the public law office]'s proposed representation of [the new client]." *Id*. at 166.

The "substantial relationship" analysis under California law "mediates between two interests that are in tension in such a context—the freedom of the subsequent client to *counsel of choice*, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other." *Flatt*, 9 Cal. 4th at 283 (emphasis added). As discussed above, the Sixth Amendment does not confer the right to "counsel of choice" to defendants who cannot afford to hire their own lawyer, such as Chaabani. *See, e.g.*, *Caplin & Drysdale, Chartered*, 491 U.S. at 624. However, for the purposes of this analysis, the Court will assume without deciding that Chaabani possesses some commensurate right or interest in continuity of current counsel that she prefers.

It is undisputed that Federal Defenders represented Mihailescu and Chaabani in substantially related matters, given that the Government alleges they were part of the same unlawful conspiracy, with the Government alleging that "Mihailescu was a recruiter/organizer who could potentially have supervised or directed Chaabani and Stoica." ECF No. 33 at 3. Similarly, it is undisputed that the potential of Chaabani's attorney to cross-examine Mihailescu would be materially adverse to Mihailescu. *See* ECF No. 29 at 4. It is also possible that Federal Defenders' continued representation of Chaabani would be materially adverse to Chaabani. *See* ECF No. 33 at 8–9 ("Here, Federal Defenders' former representation of Mihailescu could theoretically hinder their current representation of Chaabani. For example, if Mihailescu confidentially shared with Federal Defenders that he has a strong bias against Chaabani due to unrelated personal reasons, their duty to Chaabani would require them to impeach Mihailescu with this information. But this requirement would conflict with their ongoing duty to Mihailescu to maintain the confidentiality of his communications, potentially leading them to 'pull punches' during cross-examination by not using confidential information about him for impeachment purposes.") (citing ABA Model Rules 1.6 (Confidentiality of Information), 1.9 (Duties to Former Clients)); *see also Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989) ("Among the dangers in a successive representation situation is that the attorney who has

1  obtained privileged information from the former client may fail to conduct a rigorous cross-
2  examination for fear of misusing that confidential information.").

3  Federal Defenders asserts that "Mr. Mihailescu has agreed to waive any potential
4  conflict created by Federal Defenders' representation of Ms. Chaabani, after receiving
5  advice from his retained counsel," and "Ms. Chaabani has also been fully apprised of
6  Federal Defender's prior representation of Mr. Mihailescu and also seeks to waive any
7  potential conflict." ECF No. 29 at 4–5. No affidavits have been filed nor has a written
8  waiver been filed on behalf of Mihailescu. The Court has been provided no information to
9  gauge the scope, terms, or adequacy of Mihailescu's purported waiver.

10  Although the pending Motion to Resolve Conflict Issue states that "Federal
11  Defenders never received any discovery on Mr. Mihailescu's matter," *id*. at 2, and Federal
12  Defenders only represented Mihailescu for a short time, the record is silent on whether any
13  Federal Defenders attorney met privately in person or by phone with Mihailescu during the
14  period of representation and/or whether Federal Defenders obtained any confidential
15  information apart from discovery. Given the sparse state of the record and the fact that
16  Federal Defenders bears the burden on this issue, *see In re Charlisse C.*, 45 Cal. 4th at 166,
17  the Court presumes that the Federal Defenders attorney who filed a general appearance on
18  behalf of Mihailescu received confidential information related to the conspiracy charges
19  that the Government alleges implicates both Mihailescu and Chaabani. The record also
20  contains no indication of the roles of the attorneys at issue within the Federal Defenders
21  organization, and in particular, whether any of the attorneys have "managerial,
22  supervisorial, and/or policymaking responsibilities" within Federal Defenders. *Id*. at 163.
23  Given the sparse record, the Court is unable to find that screening is "sufficient to avoid
24  vicarious disqualification of the entire office." *Id*.

25  After the April 7, 2025 hearing, Federal Defendants filed a letter memorializing
26  Federal Defender's "Informed Consent Waiver" discussion with Chaabani. The letter states
27  that "[w]e discussed your right to receive outside legal advice about whether you should
28  proceed with waiving a conflict of interest." ECF No. 42 at 2. It is unclear from the letter

whether Chaabani was told or understood that the outside legal advice would be provided without charge to her. The record contains no indication of Chaabani's relevant experience and sophistication. *See* Cal Rule Prof. Conduct 1.7, Cmt. 9 ("The experience and sophistication of the client giving consent, as well as whether the client is independently represented in connection with giving consent, are also relevant in determining whether the client reasonably understands the risks involved in giving consent."); *cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (finding that habeas petitioner's waiver of his right to conflict-free counsel was invalid because "he did not seek the advice of outside counsel and had only a cursory discussion with the judge"). The Court has considered appointing independent counsel for consultation regarding the potential conflict with Chaabani and setting a new hearing for the Court to engage in a colloquy with Chaabani, but the Court declines to do so because it would result in further delay (which may ultimately end with substitution of counsel, causing further delay) and would not cure the other gaps in the record discussed above. While the Court recognizes that relieving Federal Defenders will necessarily result in delay, the Court finds this to be necessary to protect Chaabani's right to conflict-free counsel and the Court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

The Court "must 'indulge every reasonable presumption against the waiver of fundamental rights.'" *Lewis*, 391 F.3d at 997 (quoting *Allen*, 831 F.2d at 1498); *see also Wheat*, 486 U.S. at 161–62 ("Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel.") (citations omitted). The Court finds that the record is insufficient for Federal Defenders to proceed as counsel for Chaabani notwithstanding her desire to waive the potential conflict "which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. The Motion to Resolve Conflict Issue is denied and Federal Defenders is relieved of representation of

Chaabani. The Court emphasizes that there is no finding, or even a hint, that any lawyer named in this Order, or Federal Defenders as an organization, has acted in an unethical manner or has been anything other than a zealous advocate for their client.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Resolve Conflict Issue is denied. ECF No. 29. Federal Defenders is relieved of representation of Chaabani in S.D. Cal. Case Nos. 24cr2194-WQH and 24cr2713-WQH. David Zugman is appointed to represent Chaabani pursuant to the Criminal Justice Act.

IT IS FURTHER ORDERED that the Appeal of Magistrate Judge's Revocation of Release Order ("Appeal," ECF No. 40), which was filed on April 7, 2025, remains pending. The Government shall file a response to the Appeal, and the relevant transcripts cited in the Appeal, no later than April 11, 2025. The Court will conduct a hearing on the Appeal on April 14, 2025, at 9:00 AM. David Zugman shall be prepared to address the Appeal at the April 14, 2025 hearing. The Court will address all remaining dates and deadlines at the April 14, 2025 hearing. Time is excluded from the date of this Order to April 14, 2025, due to the change in counsel and the pending Appeal, with the Court finding that the ends of justice served by the granting of this continuance outweigh the best interests of the public and Chaabani in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv).

The Clerk of the Court shall serve this Order on Zugman, Papachristou, Morgan, and counsel for the Government.

Dated: April 8, 2025

Hon. William Q. Hayes
United States District Court