UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAIMA CHAABANI,<br><br>Defendant. | Case No.: 24cr2713-WQH<br><br>**ORDER** |
|---|---|

HAYES, Judge,

    The matter before the Court is the Appeal of Magistrate Judge's Revocation of Release Order ("Appeal"), filed by Defendant Chaima Chaabani. ECF No. 40.[1]

**FACTS**

    On September 12, 2024, a Complaint was filed against Chaabani, Robert Stoica, and Mihai Viorel Stefan in this Court alleging Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) and Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2). *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 1.

    On September 24, 2024, Chaabani was arrested in the Central District of California. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 7.

---

[1] Unless otherwise noted, all citations to the docket will be in S.D. Cal. Case No. 24cr2713-WQH.

On October 7, 2024, Chaabani made her initial appearance in the Southern District of California before Magistrate Judge Daniel E. Butcher. Judge Butcher ordered Chaabani to execute a $9,000 appearance bond and required that the bond be secured by the co-signature of one financially responsible and related adult. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 63 at 12. Judge Butcher also required Chaabani to participate in the location monitoring program and imposed a curfew on Chaabani. *Id*. at 17.

On October 17, 2024, Chaabani appeared for an arraignment on an Information before Judge Butcher. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 22. The Information charged Chaabani and Stoica with Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count One) and Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count Two). *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 21.

At a hearing on October 22, 2024, Judge Butcher modified Chaabani's bond conditions to require two financially responsible adult sureties, with one of them related. *See* S.D. Cal. Case No. 24cr2194-WQH, ECF No. 28.

On November 4, 2024, Chaabani filed her bond paperwork naming her husband, J.L., as a surety "with whom defendant will live during the pendency of the case," and her friend, M.G., as her financially responsible surety who "will be responsible for the defendant's appearances in court and the defendant's compliance with all conditions of release." S.D. Cal. Case No. 24cr2194-WQH, ECF No. 31 at 4 & 6.

On December 20, 2024, an Indictment was filed in the above-captioned case, S.D. Cal. Case No. 24cr2713-WQH, charging Chaabani with Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 1), Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 2), and Aggravated Identity Theft (Counts 3–7). *See* ECF No. 1.

On January 7, 2025, Chaabani was arraigned on the Indictment in S.D. Cal. Case No. 24cr2713 before Magistrate Judge Karen S. Crawford. ECF No. 7. Judge Crawford ordered that, in the new case, the "[s]ame bond conditions will be imposed as well as set

in that matter on October 7th by Judge Butcher." ECF No. 51 at 3. Just after the hearing, the Government withdrew its motion to dismiss S.D. Cal. Case No. 24cr2194, stating:

> We need to make sure first that the sureties in that case are agreeing to roll the surety paperwork over [to the new case, Case No. 24cr2713]. So while the bond conditions remain the same, the sureties themselves have only signed a bond in [Case No. 24cr]2194. And given that the Clerk's Office needs to issue an abstract of order, I think it would be premature at this time to move to dismiss until we have the bond paperwork secured for the new -- for the newer filing.

*Id*. at 4. Judge Crawford granted the Government's request to withdraw the motion to dismiss Case No. 24cr2194.

On February 3, 2025, the parties appeared before this Court for a Motion Hearing/Trial Setting. ECF No. 13. The Government stated:

> Currently, the only bond that I believe is enforceable in this case for Ms. Chaabani's sureties is in the older case. The government's position is that we can move the conditions of the bond over to the new case, but that the sureties, as a matter of contract law, are not bound because there are new charges and the conspiracy charge -- the scope has expanded. So we have asked that the sureties file a notice of acknowledgment of the new indictment and agree to remain as sureties in the case for the new case, going forward, because I don't believe that they have. …
>
> We are happy to continue the bond, but we just think that there needs to be a notice of acknowledgment from the sureties about the fact that there are additional charges and that the scope of the conspiracy charge has expanded and it didn't have to be that verbose, just that they received a copy and agree to remain the sureties.

ECF No. 47 at 3–4. The defense agreed with the Government's proposal, *see id*. at 4, and the Court stated that, "with respect to the bond, you can go back to the magistrate judge and use your judgment as to what needs to happen in order for the sureties to be responsible, if it ever gets to that point." *Id*. at 7.

The Government asserts that, on February 4, 2025:

> [T]he defense advised the United States for the first time that J.L. was no longer living with Chaabani and that she had, in fact, obtained a restraining

3

24cr2713-WQH

> order against him. The United States checked and found a corroborating police report, which was produced to the defense. The police report memorialized an incident that occurred on November 7, 2024, at Chaabani's apartment. According to the report, which includes an interview with J.L., he and Chaabani had separated a week earlier (that is, before Chaabani submitted her bond paperwork to the Court) and J.L. had gone to live with his mother in Texas. On November 7, 2024, J.L. returned to the apartment to retrieve some of his belongings when he had found Chaabani in bed with the other surety, M.G. After a verbal confrontation, a physical altercation ensued involving all three. Chaabani declined to press charges against J.L. but did request a restraining order. M.G. was gone from the apartment when police responded and later returned to Tunisia. Officers found J.L. in the hospital, where he was being treated for injuries inflicted by M.G.

ECF No. 53 at 4. The Government asserts that it "agreed that J.L. should not be a surety, provided M.G. or some other financially responsible adult served as a surety and there was someone who would be responsible for knowing how to reach Chaabani, since J.L. no longer qualified. After several weeks, defense counsel advised that M.G. was no longer in the country and it was unknown when he would return." *Id*. The Government then "consulted immigration records and saw that M.G. had left the United States on November 27, 2024. After learning of M.G.'s departure from the United States, the United States felt that M.G. was no longer an appropriate surety for the new bond." *Id*. at 4–5.

On February 27, 2025, the parties filed a Joint Motion to Refer Bond Matter to Magistrate Judge Butcher, ECF No. 16, which the Court granted. ECF No. 17.

On March 5, 2025, Chaabani filed a Motion to Modify Conditions of Pretrial Release, requesting that she be released on an own-signature bond because "Ms. Chaabani's husband is no longer able to meet the bond conditions," "[t]he second surety is on an extended work sabbatical and no longer has an income," and "[s]he does not have any other eligible sureties who could sign the personal appearance bond." ECF No. 18 at 2.

On March 13, 2025, the Government filed an opposition to Chaabani's proposed bond modification and instead proposed "that the financially-responsible adult surety need

not be related" and "that the bond be secured by a cash deposit of $3,000." ECF No. 28 at 8. The Government asserted:

> Evidence collected in this case shows that [Chaabani] has a friend and neighbor, C.L., who has loaned her money in the past, as well as a friend, B.Z., who has paid for Chaabani's cell phone service for several years. If, in fact, Chaabani has no friends who are willing to serve as sureties, is calls into question the strength of her community ties and whether those who know her have cause to believe she might flee. Chaabani is Tunisian, all her family live in Tunisia, and M.G., with whom she has some sort of relationship, is now in Tunisia. Her lack of strong community ties to the United States and her strong ties to Tunisia further weigh against a personal signature bond.

*Id*. at 7.

On March 18, 2025, Judge Butcher conducted a hearing on the bond-modification motion. Defense counsel disputed that C.L. or B.Z. were appropriate sureties because they "are contacts that Ms. Chaabani had either many years ago that she's not in close contact with now or, for example, her next-door neighbor whose dog she sometimes takes care of, … [b]ut this is somebody whose last name that she doesn't even know." ECF No. 52 at 3. Defense counsel stated that the current surety, M.G., "will be returning [to the United States from Tunisia] before April," and "that is the only surety that I have been able to identify." *Id*. Defense counsel asserted that Chaabani's Pretrial Services Officer in Los Angeles reported that Chaabani has been in compliance with her conditions of release and "has always been forthcoming with him … about all of these things that were brought up in the Government's papers." *Id*. at 3–4. The Government responded that Chaabani "has repeatedly been complicit in the submission of false statements to the Court." *Id*. at 5. The Government stated that "I'm very concerned about Defense counsel's representation that Ms. Chaabani doesn't even know the last name of one of these people and that these are people from years ago because these are two people who the Secret Service has actually interviewed…. And both of them are in current contact with Ms. Chaabani." *Id*. The Government stated that C.L. "has repeatedly loaned Ms. Chaabani thousands of dollars" based upon "financial records." *Id*. The Government stated that B.Z. "has been paying for

[Chaabani's] cell phone for at least two years, if not longer," and "it's one of the higher-end plans." *Id*. at 5–6. Judge Butcher continued the hearing for two weeks because, "by that time, the surety in Tunisia likely may be back and available to be examined and we might have that to point to," and defense counsel "could … perhaps have another follow-up conversation with your client about other possibility of the friends acting as sureties." *Id*. at 12.

On April 3, 2025, the parties again appeared before Judge Butcher. ECF No. 36. After hearing from the parties, Judge Butcher stated:

> I don't know that I agree with [Government counsel] that Ms. Chaabani has failed to actively seek a surety. I believe she has. The problem is there are none available, which evidences a complete lack of community ties to Southern California or anywhere in the United States….
>
> I reviewed the Pretrial Services' report prepared by the Pretrial Services Office in the Central District. They recommended detention. And I trust that they were able to convince the magistrate judge there to set conditions based on a proffer that there were two strong sureties and strong ties to the Central District.
>
> It turns out that that, even if it was the case then, is no longer the case. One is in Tunisia with presumably plans to come back, but he's been there for quite a while. The other is -- they're now estranged -- and in Texas…. So apparently there are no significant family ties or community ties or strong ties at all that Ms. Chaabani has to Southern California or really anywhere in the United States that has been proffered. She has no steady employment, no apparent ability to support herself. I see that she claims to be self-employed and presumably has some income. And all her family ties are in Tunisia where she is a citizen of Tunisia….
>
> [T]here may be some immigration consequences. As a result of that, she could lose her resident status. There's now an indictment with expanded charges. To her credit, she has made her court appearances and complied, is in compliance. The proceedings up to this point have … not been particularly consequential. They will become more consequential as the case proceeds. I have to consider whether she'll appear at trial, whether she'll appear for a verdict, whether she'll appear at sentencing if she's -- remains on bond, and whether she would appear to serve any sentence. I believe there is a serious,

> serious risk of flight that occurred -- that existed at the beginning of the case that is greater now with expanded charges, indictment, lack of ties to Southern California, significant ties to a foreign country, to Tunisia, lack of employment, lack of any sureties….
>
> [T]here are no conditions that have been proposed to me that I can set that would reasonably assure her appearance in court going forward. A personal appearance bond is out of the question and there are no other sureties. So in light of that, I am going to revoke the Pretrial release order and remand Ms. Chaabani into custody.

ECF No. 46 at 10–12. Chaabani was remanded into custody at the conclusion of the April 3, 2025 hearing. ECF No. 36.

On April 7, 2025, Chaabani filed the pending Appeal. ECF No. 40. Chaabani contends that because "the government elected to forego moving for detention at Ms. Chaabani's initial appearance on October 7, … they are prohibited from doing so now" since "[t]he Bail Reform Act requires that a detention hearing 'shall be held immediately upon the person's first appearance before the judicial officer, unless that person, or the attorney for the Government seeks a continuance.'" *Id*. at 6 (quoting 18 U.S.C. § 3142(f)). Chaabani also contends that "there is insufficient evidence that Ms. Chaabani poses a serious risk of flight" because "Ms. Chaabani is in perfect compliance with location monitoring and has made every court appearance," she has been employed, and she informed her Pretrial Services Officer about the incident with her husband and "was not under an obligation to notify the government when M.G. left the country." *Id*. at 6–8. Chaabani contends that the Court should "apply the BRA's least restrictive condition requirement, and reinstate her pretrial release order with location monitoring." *Id*. at 10.

On April 11, 2025, the Government filed an opposition to the Appeal. ECF No. 53. The Government contends:

> Chaabani violated a condition of release by failing to execute a $9,000 personal appearance bond secured by the co-signature of one financially responsible and related adult. After carefully considering the 18 U.S.C. § 3142(g) factors and taking into account Chaabani's 'complete lack of community ties to Southern California or anywhere in the United States,' the

more significant charges she now faces, her significant ties to a foreign country, lack of employment, and lack of any sureties, Magistrate Judge Butcher reasonably determined that no condition or combination of conditions of release would assure Chaabani's appearance at trial. Judge Butcher's decision to remand Chaabani into custody was sound. The Court should affirm.

*Id*. at 1.

On April 14, 2025, the Court conducted a hearing on the Appeal. ECF No. 55.

## DISCUSSION

The Bail Reform Act of 1984 governs release pending trial. *See United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The statute is designed to afford bail to defendants facing trial under the least restrictive condition or combination of conditions that will reasonably assure their appearance as required. *See* 18 U.S.C. § 3142(c)(1)(B). But where a court finds that no condition or combination of conditions will reasonably assure defendant's appearance as required, the court may detain defendant without bail pending trial. *See* 18 U.S.C. § 3142(e). On motion for pretrial detention, the Government bears the burden of showing, by a preponderance of the evidence, that the defendant poses a serious risk of flight and must demonstrate that there is no condition, or combination of conditions, that would reasonably assure defendant's appearance at future proceedings if released on bond. *See Motamedi*, 767 F.2d at 1406–07.

This Court reviews the evidence de novo and makes its own determination whether to modify the detention order. *See United States v. Keonig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). The Court takes into account all available information concerning the factors set forth in § 3142(g) in determining whether there are conditions of release that will reasonably assure the appearance of the defendant, including:

(1) the nature and circumstances of the offense charged…;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also Motamedi,* 767 F.2d at 1407; *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The weight of the evidence is the least important of the factors, and the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear as required. *See United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). While "[a]lienage may be taken into account" when determining flight risk under the Bail Reform Act, "it is not dispositive." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019). The Court is required to make an "individualized determination" under the Bail Reform Act. *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). "Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *Diaz-Hernandez*, 943 F.3d at 1198.

    As an initial matter, Chaabani challenges the authority of Judge Butcher to consider the Government's request to reopen the detention hearing and revoke the Pretrial Release Order. Pursuant to the Bail Reform Act:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

1   18 U.S.C. § 3142(f). Moreover, under 18 U.S.C. § 3148(b), the judicial officer who ordered
2   the release of a defendant "shall enter an order of revocation and detention if, after a
3   hearing, the judicial officer … finds that there is … clear and convincing evidence that the
4   person has violated any other condition of release" and finds that, based on the § 3142
5   factors, "there is no condition or combination of conditions of release that will assure that
6   the person will not flee." 18 U.S.C. § 3148(b)(1)(B) and (b)(2)(A).

Upon the filing of the Indictment, which expanded the charges against Chaabani and initiated a new case, the Pretrial Release Order signed by Judge Butcher required Chaabani to "execute an appearance bond in the amount of $9,000 … [s]ecured [by] [t]he co-signature[] of 1 financially responsible and related adult." ECF No. 9 at 1. Chaabani has not met this requirement. Accordingly, there is "clear and convincing evidence that [Chaabani] has violated [a] condition of release." 18 U.S.C. § 3148(b)(1)(B).

The Court next considers the factors set forth in § 3142(g) in determining whether there are conditions of release that will reasonably assure the appearance of the Chaabani.

Chaabani is charged with the following felony offenses carrying significant statutory maximum sentences: Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 1), Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 2), and Aggravated Identity Theft (Counts 3–7). *See* ECF No. 1. The severity of potential punishment favors detention.

Based upon the allegations of the Complaint in the prior case and the allegations of the Indictment and the recently filed pretrial lodgments in this case (*see* ECF Nos. 20–24, 26–27), the weight of the evidence is substantial. The Government asserts that "Chaabani was recorded at multiple ATMs in San Diego using skimmed access devices to drain the benefits accounts of state welfare recipients" and "[t]he United States will present evidence from multiple law enforcement witnesses, summary charts of voluminous records, certified business records, cell site data, materials from Chaabani's and Stoica's personal devices, banking information, and co-conspirator testimony directly implicating Chaabani in the

charged offenses." ECF No. 53 at 9. However, the weight of the evidence is the least important factor.

Chaabani's history and characteristics are mixed. Chaabani has no criminal history and has appeared for all court proceedings, which both weigh in favor of release. However, as noted by Judge Butcher, the proceedings up to this point have not been particularly consequential, while future proceedings will become far more consequential—the next two scheduled hearings are the motions-in-limine hearing and the first day of trial.

Chaabani's family and community ties in the United States appear to be weak, given Chaabani's failure locate a suitable individual willing to serve as a surety. At the hearing on the Appeal, Chaabani argued that C.L. was willing to serve as a surety. However, the Court finds that C.L. is not suitable, given the fact that he was in Colombia at the time, he appears to regularly spend two weeks each month in Colombia, and the Government has asserted that he has multiple convictions for driving under the influence and arrests for domestic violence. Chaabani is Tunisian, her family lives in Tunisia, and M.G. is currently in Tunisia. Chaabani's strong ties to Tunisia as compared to her relatively weak ties to the United States weigh in favor of detention.

The Government asserts that "Defendant has offered no documentation of her employment, let alone of assets that would cover the proposed bond modification," and "[s]ince indicting the case, the United States has gathered and shared with defense evidence of Chaabani's drug use." ECF No. 53 at 11. The Government also argued at the hearing on the Appeal that, despite living in the United States for ten years, there is no record of Chaabani paying income taxes, and despite evidence that Chaabani has been living and driving in California for years, there is no record of Chaabani having a driver's license in California or elsewhere. Moreover, at the time Chaabani submitted her bond paperwork to the Court, it contained a material misstatement, since she was no longer living with J.L. These facts evidence a lack of candor and/or willingness to obey rules, and weigh in favor of detention and against Chaabani's proposal that she be release on a personal signature bond.

After weighing the relevant § 3142(g) factors, the Court finds that, based upon the current record, the Government has shown by a preponderance of the evidence that Chaabani poses a serious risk of flight and there is no condition, or combination of conditions, that would reasonably assure Chaabani's appearance at future proceedings if released on bond.

## CONCLUSION

IT IS HEREBY ORDERED that the Appeal is denied. ECF No. 40. The Court finds that, based upon the current record, Chaabani must be detained pending trial pursuant to the factors in 18 U.S.C. § 3142(g). Unless otherwise ordered by the Court, any future requests for bond shall be made before Judge Butcher.

Dated: April 16, 2025

Hon. William Q. Hayes
United States District Court