ADAM GORDON
United States Attorney
SABRINA L. FEVE
ROBERT J. MILLER
Assistant United States Attorneys
Cal. Bar No. 226590/Penn. Bar No. 309258
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6786/8403
Email: Sabrina.Feve@usdoj.gov
            Robert.Miller4@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAIMA CHAABANI,<br><br>Defendant. | Case No.: 24-cr-2713-WQH<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12 MOTIONS AND MOTIONS *IN LIMINE***<br><br>The Honorable William Q. Hayes<br><br>Date: May 21, 2025<br>Time: 9:00am<br>Courtroom: 14B |

The United States of America, by and through Adam Gordon, United States Attorney, and Sabrina L. Fève and Robert J. Miller, Assistant United States Attorneys, hereby files its Response in Opposition to Defendant's Rule 12 Motions and Motions *in Limine* (ECF No. 70), along with points and authorities as set forth below.

## I.  MOTION TO ALLOW RULE 12 MOTIONS

In light of the conflict ruling, change of counsel, and superseding indictment, the United States does not oppose Defendant's motion to allow the filing of Rule 12(b) motions after the normal deadline.

## II.    <u>THE SUPERSEDING INDICTMENT & DISCOVERY</u>

On May 2, 2025, the grand jury returned a Superseding Indictment that contains six counts. ECF No. 63.

Count 1 charges Defendant Chaima Chaabani and Robert Stoica (charged elsewhere) with Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(2) and (b)(2), for conduct that occurred between December 1, 2023, and September 5, 2024. Count 1 describes the "Purpose of the Conspiracy," which was to obtain stolen Electronic Benefit Transfer ("EBT") account numbers and personal identification numbers ("PINs"), and to use that stolen information to withdraw funds from the EBT accounts without authorization from either the accounts' named beneficiary or the accounts' issuing authority. Count 1 also describes eight overt acts undertaken by member of the conspiracy. Six of the overt acts, which are attributed to Chaabani, identify the date and ATM location where she is alleged to have used and attempted to use stolen EBT account numbers to withdraw cash.

Count 2 charges Chaabani with Use and Attempted Use of Unauthorized Access Devices, in violation of 18 U.S.C. §§ 1029(a)(2) and (b)(1), for conduct she allegedly undertook between December 1, 2023, and December 3, 2023.

Counts 3 through 6 charge Chaabani with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). A different victim is identified in each of the counts by their initials. Each count also identifies the date and location where Chaabani is alleged to have used the victim's EBT account number without lawful authority.

The United States has produced in discovery all the exhibits that were presented to the grand jury. These exhibits include spreadsheets for all the fraudulent transactions attributed to Chaabani and her coconspirators. These spreadsheets include the date, time, location, EBT account number, attempted withdrawal, actual withdrawals, and victim identification for all the transactions attributed to the conspiracy. The United States has also provided Defendant with a copy of the Rule 1006 summary chart containing this

1    information, which the United States intends to introduce at trial and that was lodged with
2    the Court on March 10, 2025. ECF No. 27-2.

3    **III.    THE SUPERSEDING INDICTMENT IS NOT FACIALLY DEFICIENT**

4         Defendant seeks dismissal of Counts 1 and 2 of the Superseding Indictment based
5    on two arguments: First, that Counts 1 and 2 fail to state a claim because they incorrectly
6    allege an "intent to defraud" and must instead (or perhaps in addition) allege an "an intent
7    to deceive and cheat." ECF No. 70 at 4-5. Second, that Counts 1 and 2 fail to allege
8    "convergence." *Id.* at 5-6. Both arguments fail for the reasons described below.

9         **1.  Counts 1 and 2 Properly Allege An "Intent to Defraud"**

10        "An indictment is sufficient if it contains the elements of the charged crime in
11   adequate detail to inform the defendant of the charge." *United States v. Solakyan*, 119 F.4th
12   575, 590–91 (9th Cir. 2024) (quoting *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th
13   Cir. 2016)). In assessing the sufficiency of the indictment, the courts "must look at the
14   indictment as a whole, include facts which are necessarily implied, and construe it
15   according to common sense." *Id.* "The test for sufficiency of the indictment is 'not whether
16   it could have been framed in a more satisfactory manner, but whether it conforms to
17   minimal constitutional standards.'" *United States v. Awad*, 551 F.3d 930, 935 (quoting
18   *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)).

19        The standard for evaluating the sufficiency of a conspiracy count is even more
20   flexible. "The Supreme Court held many years ago that as long as the conspiracy itself is
21   adequately alleged, a conspiracy indictment need not allege the offense that is the object
22   of the conspiracy with the same precision as would be necessary where that offense is itself
23   the crime charged." *United States v. Lo*, 231 F.3d 471, 481 (9th Cir. 2000) (citing *Wong*
24   *Tai v. United States*, 273 U.S. 77, 81 (1927)).

25        *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999), which Chaabani cites as the
26   authority for why Counts 1 and 2 should be dismissed, is consistent with these standards
27   of review and does not justify dismissal. *Du Bo* held that an indictment's "complete failure"
28   to allege the criminal intent element of the Hobbs Act required dismissal. *Id.* at 1180–81.

Here, unlike in *Du Bo*, there was no failure, let alone a complete failure, to allege criminal intent. It is undisputed that Counts 1 and 2 each allege that the defendant acted "knowingly and with intent to defraud." ECF No. 70 at 2–3. The Ninth Circuit Model Criminal Jury Instructions specify that the third element for proving a violation of 18 U.S.C. § 1029(a)(2) is "the defendant acted with the intent to defraud." Ninth Cir. Mod. Crim. J. Instr. 15.11. Counts 1 and 2 of the Superseding Indictment therefore contain the requisite intent element of the charged crimes in adequate detail to inform the defendant of the charges. *Du Bo* neither justifies nor requires dismissal of either count.

Chaabani's reliance on *Saini*, *Brown*, and *Miller* is likewise misplaced. Those cases addressed jury instructions for defining the element of "intent to defraud," not the facial sufficiency of the charges pled in the indictments. *See United States v. Saini*, 23 F.4th 1155, 1163 (9th Cir. 2022) (holding "the ordinary meaning of 'intent to defraud' under § 1029(a)(3) and (4) requires an intent to deceive and cheat"); *accord United States v. Brown*, No. 22-50158, 2024 WL 3631145, at *2 (9th Cir. Aug. 2, 2024) (holding that it was instructional error to define "intent to defraud" as "intent to deceive or cheat," but that the error did not violate Brown's substantial rights); *cf. United States v. Miller*, 953 F.3d 1095, 1098 (9th Cir. 2020) (holding that "the jury charge misstated the law by instructing that wire fraud under 18 U.S.C. § 1343 requires the intent to 'deceive *or* chat' rather than the intent to 'deceive *and* cheat'").

None of these cases held that the indictments were legally deficient for failing to include definitional language for the intent element. *Brown*, which found that use of the incorrect jury instruction did not violate the defendant's substantial rights, in fact counsels against Chaabani's argument that Counts 1 and 2 must be dismissed for failing to incorporate the jury instruction into the charges. Instead of justifying dismissal, the cases cited by Chaabani are consistent with the relevant Ninth Circuit Model Criminal Jury Instruction, whose commentary cites to Instruction 4.13 "[f]or a definition of 'intent to defraud.'" Ninth Cir. Mod. Crim. J. Instr. 15.11. Ninth Circuit Model Criminal Jury Instruction 4.13, in turn, defines "intent to defraud" as "an intent to deceive [or] [and]

*Government's Response in Partial Opposition to*
*Defendant's Rule 12 Motions and Motions in Limine*

*24-cr-2713-WQH*

cheat." Ninth Cir. Mod. Crim. J. Instr. 4.13. While Chaabani may correctly argue that the jury should be instructed that the "intent to defraud" element alleged in Counts 1 and 2 requires proof of an "intent to deceive and cheat," she cannot show that this definition *changed* the element to be pled. Rather, *Saini* repeatedly described the requisite scienter element for § 1029(a)(3) and (a)(4) as an "intent to defraud." 23 F.4th at 1161-–62. To hold otherwise would require an indictment to allege "the plain and ordinary meaning" of the words of the statute, *id.* at 1160, which would either contradict or render superfluous *Solakyan*'s dictate that courts "construe [an indictment] according to common sense." 119 F.4th at 591.

The Court therefore should reject Chaabani's Motion to Dismiss Counts 1 and 2 for not including an express reference to her intent to deceive and cheat.

**2. There is No "Convergence" Defect**

As part of her challenge to the sufficiency of the intent elements pled in Counts 1 and 2, Chaabani argues that the "[t]here is a failure of convergence" because the Superseding Indictment fails to allege that she "deceived . . . the holder of the property obtained." ECF No. 70 at 5–6. The two cases Chaabani cites in support of this argument, *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989) and *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020), involved mail and wire fraud charges, which share similar language and are typically subject to similar analysis. *See Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987). In *Holmes*, the district court cited *Lew* for the finding that the "intent to defraud" [] requires convergence; the defendant must intend to deprive the alleged victim of money or property." *Holmes*, 2020 WL 666563 at *18.

Chaabani's argument appears to be that Counts 1 and 2, to be facially sufficient, needed to allege that she intended to defraud the victims in this case. ECF No. 70 at 5. She fails to provide any authority, however, for why convergence, which has historically only been applied to wire/mail fraud charges, applies to access device fraud cases. Arguments about "convergence" arise when a defendant challenges the claim that they sought to

deprive a wire/mail fraud victim of money or property. In *Lew*, for example, the defendant was convicted of mail fraud for making misrepresentations to the Bureau of Labor on behalf of his paying immigration clients. 875 F.3d at 220–21. The Ninth Circuit found that the target of the mail fraud was the government, which was tricked into issuing a certification, which was not money or property, and that the defendant's paying clients, who were the alleged victims, had not been deceived. *Id.*

Section 1029 does not involve discussions of "money or property" and *Loughrin v. United States*, 573 U.S. 351 (2014) demonstrates why "convergence" is inapplicable to access device fraud charges. In *Loughrin*, the defendant was charged with bank fraud under 18 U.S.C. § 1344(2) after he cashed stolen checks at Target.[1] *Id.* at 353. On appeal, Loughrin argued that his § 1344(2) bank fraud conviction required proof that he intended to defraud the banks on which the checks were drawn, when he only intended to defraud Target (the retail store). *Id.* at 355. The Supreme Court rejected the argument, finding that these bank fraud charges were distinguishable from the mail and wire fraud charges and did not require the government to prove that the defendant made a direct misrepresentation to a bank. *Id.* at 353. Similarly, in *United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010), the Ninth Circuit found that, even though the wire fraud defendants did not make a direct misrepresentation to the alleged victim, Microsoft, their conduct deprived Microsoft of "revenue when the products were sold at a discount as a result of the fraud." *Id.* at 1068. *Loughrin* and *Ali* establish that the victims in this case, like the banks in *Loughrin* and Microsoft in *Ali*, can be defrauded regardless of whether Chaabani intended to defraud them or the banks that operate the ATMs from which she made her fraudulent withdrawals. Chaabani's convergence argument therefore should also be denied.

## IV.    CHAABANI'S "CRUX OF THE OFFENSE" ARGUMENT ALSO FAILS

The Court should likewise reject Chaabani's argument that Counts 1 and 2 should be dismissed due to "the absence of allegations establishing the access device as the crux

---

[1] Under Ninth Circuit Model Criminal Jury Instruction 15.39, the fourth element of a violation of 18 U.S.C. § 1344(2) is that "the defendant acted with the intent to defraud."

of the offense." ECF No. 70, at 6; *see also id.* at 7 (arguing "the indictment does not specify how Chaabani's alleged conduct relied on the access device as the crux of the fraudulent scheme," and thus "does not establish the essential nexus between the access device and the offense"). There are at least three defects with this argument.

First, Chaabani again conflates a potential jury instruction with a necessary element. It is somewhat unclear whether she is seeking to dismiss the access device counts (Counts 1 and 2) or the aggravated identity theft counts (Counts 3 through 6) for failing to allege that use of an access devices was at the "crux of the offense." The most high-profile case to involve an in-depth discussion about whether the charged conduct was "at the crux what makes the conduct criminal" is *Dubin v. United States*, 599 U.S. 110, 131 (2023), which Chaabani does not cite and which involved 18 U.S.C. § 1028A. Like *Saini*, *Brown*, and *Miller*, *Dubin* involved a debate over how to define an element of the charged crime. In *Dubin*, the questions were what constituted "use" of a means of identification and "in relation to" the predicate crime. 599 U.S. at 117. The combined answer, *Dubin* held, was "particularly sensitive to context," *id.* at 118, and "supports a reading of 'in relation to' where use of the means of identification is at the crux of the underlying criminality." *Id.* 122. At no point, however, did *Dubin* suggest, let alone hold, that these definitions needed to be pled in the indictment itself.

Second, none of the cases Chaabani cites hold that a § 1029 charge (or a § 1028A charge) is facially defective if it fails to allege that the defendant relied on the access device as "the crux of the offense." In *United States v. Onyesoh*, 674 F.3d 1157, 1158 (9th Cir. 2012), the court held that "the Government must prove the usability of an expired credit card number in order for a district court to enhance a sentence" under U.S.S.G. § 2B1.1(b)(1), based on the defendant's possession of a spreadsheet containing 500 expired credit card numbers. In *United States v. Bailey*, 41 F.3d 413 (9th Cir. 1994), the court held that the practice of "tumbling the ESN"—that is, modifying cellular telephones so as to fool the local network into permitting unbilled calls in roaming mode—falls within the

reach of 18 U.S.C. § 1029. Neither case held, or even implied, that a § 1029 charge must allege the defendant's use of the access device was "the crux of the offense."

The case Chaabani belatedly cited, *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), involved a drug smuggling conspiracy where the indictment's only factual allegations were that the conspiracy occurred in Arizona and Mexico and the names of some of the coconspirators. *Id.* at 1296–97. The Ninth Circuit noted that "[t]he indictment fails to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof," and, "[m]ore importantly … fails to place the conspiracies within any time frame." *Id.* at 1297. Instead, "[t]he language 'beginning on or before July, 1975, and continuing thereafter until on or after October, 1975,' is open-ended in both directions." *Id.*

In contrast, Counts 1 and 2 of the Superseding Indictment in this case contain specific date ranges, and Count 1 alleges eight overt acts that include the date and location of the fraudulent transactions attributed to Chaabani over a three-day period. ECF No. 63, at 2–4. Count 1 expressly alleges that "[i]n furtherance of the conspiracy and to effect its objects," Chaabani "used and attempted to use stolen EBT account numbers to withdraw cash" on six separate occasions between December 1, 2023, and December 3, 2023. *Id.* at 3. Thus, even assuming Defendant's false premise—that § 1029 charges must "establish the essential nexus between the access device and the offense"—the United States has met that standard here.

Third, where Chaabani cites to *Cecil* at the end of the section discussing why the Superseding Indictment needed to allege that use of the access devices was at the "crux of the offense," she appears to raise an additional argument. Specifically, she asserts that the absence of more detailed allegations "establishing the access device as the crux of the offense" constitutes a "lack of specificity [that] deprives Chaabani of notice of the charges and fails to meet constitutional standards under the Fifth and Sixth Amendments." ECF No. 70 at 7. This sentence is Chaabani's only reference to the Fifth and Sixth Amendments

and, without more, it is difficult to respond to the argument. The sentence suggests that Chaabani is seeking a bill of particulars. If so, that request should be stated clearly.

Regardless, a bill of particulars is unnecessary when the indictment alleges sufficient details of the charges and the government provides full discovery. *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). In *United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991), the Ninth Circuit held that no bill of particulars was needed when a conspiracy charge contained five separate means and methods and fifteen overt acts, and the government provided "a significant amount of discovery." Here, Count 1, the conspiracy count, describes the purpose of the conspiracy and eight overt acts. Count 2 charges as a substantive access device fraud count the six overt acts attributed to Chaabani in Count 1. The United States has also provided in discovery all the pertinent details about the transactions at issue in Counts 1 and 2, which are also reflected in the Rule 1006 summary chart previously lodged with the Court. ECF No. 27. To claim a plausible Fifth or Sixth Amendment violation, Chaabani must explain how the allegations in the Superseding Indictment and the substantial discovery she has received fail to allow her to prepare her defense or defend against double jeopardy. Unless such a showing is made, her motion should be denied.

## V. THE COURT SHOULD ALLOW VICTIM TESTIMONY REGARDING LACK OF AUTHORIZATION AND FINANCIAL LOSSES

In § 1028A prosecutions, testimony from victims of the defendant's alleged identity theft(s) is not only permissible but necessary, "because aggravated identity theft requires proof that the victim was a real person." *United States v. Ward*, 747 F.3d 1184, 1192 (9th Cir. 2014) (citing *United States v. Maciel–Alcala*, 612 F.3d 1092, 1095–96 (9th Cir. 2010)). In this case, the United States will call the four named victims in Counts 3 through 6 to testify that they did not know Chaabani and did not permit her to use their EBT accounts, thereby establishing both that Chaabani victimized real people, and that she did so "without legal authority," an element of the offense. Ninth Circuit Model Criminal Jury Instruction 15.9; *see United States v. Joseph*, 567 F. App'x 844, 849 (11th Cir. 2014) (victim's

testimony that he did not know defendant was sufficient to establish that defendant used victim's means of identification without lawful authority, as required to support his conviction of aggravated identity theft under 18 U.S.C. § 1028A).

The United States must also prove that Chaabani used her victims' means of identification "during and in relation to the felony violations charged in Counts 1 and 2 of [the] Indictment" (ECF No. 63), that is, the access device fraud charges under 18 U.S.C. § 1029(a)(2) and (b)(2). *See* Ninth Cir. Mod. Crim. J. Instr. 15.9. The access device fraud charges require proof that Chaabani and her coconspirators, through their use of one or more unauthorized access devices, obtained cash and other things of value aggregating $1,000 and more during a one-year period. ECF No. 63; *see* Ninth Cir. Mod. Crim. J. Instr. 15.11. The United States will prove this separate element of § 1028A, in part, through victim testimony regarding the financial losses they experienced due to Chaabani's unauthorized use of their identifying information to drain their EBT accounts. The Court should allow this testimony, as it bears directly on elements of the charged offenses.

Chaabani argues that "[t]he United States should be prohibited from eliciting the financial impact on the victims as it is not relevant to the charges and will unduly prejudice [her]." ECF No. 70, at 7. The United States understands that victim-impact testimony raises potential 403 concerns when introduced on the merits and is not seeking to go beyond the relevant purposes described above. That said, even the cases Chaabani cites in support of her argument conclude that victim-impact testimony is relevant in fraud prosecutions "to show intent to defraud," an element of the § 1029(a)(2) counts. *See United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994) ("Proving specific intent in mail fraud cases is difficult, and, as a result, a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent." (citing *United States v. Foshee,* 606 F.2d 111, 113 (5th Cir. 1979), *cert. denied,* 444 U.S. 1082 (1980))); *id.* ("Proof that someone was victimized by the fraud is thus treated as some evidence of the schemer's intent." (citing *United States v. Heimann*, 705 F.2d 662, 669 (2d Cir. 1983))).

The Court should therefore allow the victims of Counts 3 through 6 to testify regarding their lack of authorization to Chaabani to use their means of identification (EBT accounts), as well as the financial losses they suffered as a result of Chaabani's actions.

## VI.   THE COURT SHOULD ALLOW CROSS-EXAM ABOUT CHAABANI'S MARRIAGE IF ADMISSIBLE UNDER RULES 404(b) OR 608(b)

As argued in the Government's motions *in limine*, Chaabani's entire lawful permanent resident application is premised upon her being in a good-faith marriage to J.L., but evidence collected during the investigation indicates they lived separate lives—physically, financially, and emotionally. Inquiry into these matters on cross-examination of Chaabani is permissible (though the introduction of extrinsic evidence to prove such matters is not) because they are specific instances of Chaabani's conduct that are probative of her character for untruthfulness. Fed. R. Evid. 608(b); *see United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (holding that Rule 608(b) permits impeachment by specific acts that have not resulted in a criminal conviction). Chaabani's argument to the contrary is unsupported and does not even attempt to meet the United States' argument on its terms. The Court should allow the United States to cross-examine Chaabani, should she choose to testify, on her acts of falsity relating to her marriage.

## VII.   THE UNITED STATES' PROPOSED 404(b) EVIDENCE IS ADMISSIBLE

Chaabani argues that with respect to Rule 404(b) evidence, "[t]he burden is on the United States to prove … admissibility." ECF No. 70, at 9. Indeed. Which is why in its motions *in limine*, the United States expressly recognized "that the admissibility of evidence depends on an array of facts and considerations that only become clear at trial, [and thus] the United States is not seeking to pre-admit evidence," and only sought to establish that its notice was sufficient under the rule. That said, the United States submits that its proposed 404(b) evidence is admissible for the reasons described below. First, however, the United States will address the legal standard for admitting evidence under Rule 404(b) and discuss why Chaabani's proposed stipulation cannot restrict which evidence the United States can introduce at trial.

### 1.  Applicable Law

Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). "Such evidence 'may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.'" *Id.* (quoting *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000)); *see also United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004) (Rule 404(b) "allow[s] for the introduction of both prior and subsequent bad acts evidence").

When, however, conduct is "inextricable from and provide[s] necessary context for" the charged conduct it is not considered "other crimes" under Rule 404(b). *United States v. Williams*, 989 F.2 1061, 1070 (9th Cir. 1993); *see also United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (evidence should not be considered "other act" evidence under Rule 404(b) if "the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined.").

### 2.  Defendant's Proposed Stipulation is Irrelevant to the Rule 404(b) Analysis

Defendant represents that "[m]ost of what the United States seeks for 404(b) is not going to be an issue [because] Ms. Chaabani will stipulate that it was her at the ATM." ECF No. 70 at 8. This proposed stipulation is appreciated but also largely irrelevant to the Rule 404(b) evidence noticed by the United States. Chaabani acknowledging that the woman depicted on the ATM surveillance video who looks like her is, in fact, her only addresses the issue of identity. Her proposed stipulation does not address her state of mind. The arguments and briefing submitted to date strongly indicates that the disputed issue at trial will be whether Chaabani acted with an intend to defraud when she made the ATM withdrawals that were caught on camera. The proposed Rule 404(b) evidence noticed by the United States is relevant because it goes to Chaabani's state of mind, not to the identity of the woman on camera.

While there are limited exceptions where a defendant can prevent the introduction of certain evidence via stipulation, this is not such a case. Rather, as the Supreme Court found in *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997), "the prosecution is entitled to prove its case by evidence of its own choice" and "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case" even when the proffered evidence is inculpatory and not self-serving. *See also United States v. Allen*, 341 F.3d 870, 888 (9th Cir. 2003) (noting *Old Chief* "made clear that in cases in which the defendant's felon status is *not* at issue," the prosecution cannot be forced by stipulation to substitute evidence of the defendant's "thoughts and actions in perpetrating the offense for which [s]he is being tried." (emphasis original)). Similarly, unless Chaabani's proposed stipulation would "supply evidentiary value at least equivalent to what the Government's own evidence carried," she cannot use it to restrict which evidence the United States seeks to use at trial. *Id.* at 186; *see also United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008). Even if Chaabani were proposing a stipulation regarding her state of mind, the United States would still be entitled to its choice of evidence. Being that she is not making such an offer, her proposed stipulation is immaterial to the Court's analysis under Rule 404(b).

### 3. Use of Los-Angeles Area ATMs & ATM Deposits Is Relevant & Admissible

On March 10, 2025, the United States provided notice, in an abundance of caution, of evidence of potential prior wrongs or acts that it might introduce at trial. ECF No. 23. Rather than copying the notice, which is long, this response incorporates it by reference. The notice included a detailed description of Chaabani's banking activities, to the extent these activities were not inextricably intertwined with the broader conspiracy. These details included the dates and locations of Los Angeles ATMs where Chaabani made large cash deposits at the start of the month. The notice also described financial transactions that Chaabani undertook on Stoica's apparent behalf. *Id.*

Having received and reviewed the notice, Defendant now seeks to exclude evidence that Chaabani repeatedly used ATMs near where she lived in Los Angeles and that she

repeatedly made large cash deposits to these ATMs at the start of the month. ECF No. 70 at 9. She argues that this evidence is "speculative" and "prejudicial by suggesting habitual criminality." *Id.* She also challenges this evidence because "the United States provides no witness to tie them to the conspiracy." *Id.*

Defendant's use of the Los Angeles ATMs is relevant circumstantial evidence of her motive, intent, and knowledge. Chaabani's repeated use of Los Angeles ATMs shows she knew that she had functional ATMs conveniently near her home. No sensible person in Los Angeles drives to and from San Diego, three nights in a row, just for the novelty of using San Diego ATMs. Rather, she and her co-conspirator needed a good reason to invest the time and additional money on gas. The only discernible reason was that, at the time, San Diego County ATMs released EBT funds at midnight, while Los Angeles County ATMs released EBT funds at 6 a.m.—a fact the United States will introduce at trial. Chaabani's use of Los Angeles ATMs is therefore relevant and admissible "evidence creating a coherent narrative of [Chaabani's] thoughts and actions in perpetrating the offense." *Allen*, 341 F.3d at 888.

Defendant's use of the Los Angeles ATMs is also evidence of her absence of mistake or accident. As part of her defense, Chaabani is likely to blame Stoica and claim he duped her. The effort and expense of traveling to San Diego just to use ATMs, when Chaabani knew she had perfectly good ATMs in Los Angeles, is relevant evidence for both the government's case-in-chief and cross-examination about why Chaabani should have known that she was up to no good. Whatever story she claims Stoica told her, Chaabani should have known to ask what legitimate reason there could reasonably be for going to San Diego at midnight to use ATMs there, and then driving home, when she knew that there were functional ATMs in Los Angeles that could be accessed during normal waking hours.

Defendant's effort to dismiss the evidence as "speculative" because it "infer[s] intent" ignores that circumstantial evidence can be used to prove intent. *United States v. Andrews*, 75 F.3d 552, 555–56 (9th Cir. 1996) ("the jury can infer intent from

circumstantial evidence"); (*United States v. Ciccone*, 219 F.3d 1078, 1083-84 (9th Cir. 2000) ("[t]he government can establish knowledge of a fraudulent purpose by circumstantial evidence"); *see also United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990) ("circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred") (citation omitted). Chaabani's assertion that the United States must provide a "witness to tie [the bank transactions] to the conspiracy" similarly ignores that circumstantial evidence "is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned," *Stauffer*, 922 F.2d at 514, and that evidence of conspiracy "can be proved by direct or circumstantial evidence, including inferences from circumstantial evidence." *United States v. Loveland*, 825 F.3d 555, 557 (9th Cir. 2016).

The amount and timing of the cash deposits that Chaabani made are also evidence of her motive, intent, knowledge, and absence of mistake or accident. Despite not having any discernible legitimate income, Chaabani repeatedly received and made large, round cash deposits at the start of the month—which was when the conspiracy tended to make its fraudulent withdrawals. The deposits are circumstantial evidence of both the conspiracy, namely that Chaabani agreed to help Stoica by concealing and transferring the proceeds, and that she knew Stoica was acting fraudulently, because otherwise he would not have needed her help with the cash. Chaabani also has no legitimate source of these funds, which goes to her motive and intent (to make money) and her knowledge and absence of mistake or accident (because the cash had to come from somewhere). Likely for this reason, Chaabani "concedes that cash deposits or transfers [] could be evidence of the conspiracy…." ECF No. 70 at 9.

Chaabani's argument that the deposits from October 2023 and May 2024 are "outside the charged period" and therefore inadmissible ignores that Count 1 charges that conspiracy began "on a date unknown to the grand jury, but not later than December 1, 2023, through and including September 5, 2024…." ECF No. 63 at 2. Rule 404(b) evidence

is also admissible for "both prior and subsequent bad acts." *Sioux*, 362 F.3d at 1246. The dates of the noticed acts are therefore not a barrier to admission.

If nothing else, Chaabani's motion demonstrates that the United States has satisfied its notice obligation under Rule 404(b). Having given proper notice and having shown that the noticed acts are inextricably intertwined and relevant to her state of mind, the United States submits the Court should deny Chaabani's motion to exclude the relevant evidence of Chaabani's Los Angeles ATM use and her cash deposits at the start of the month.

### 4. Purchase of Luxury Goods is Relevant & Proper for Cross-Examination

The United States only intends to use evidence of Chaabani and Stoica's use of stolen credit cards to buy and resell luxury goods during cross-examination and only if Chaabani denies knowing that Stoica was involved in fraud, claims to have been duped or subject to duress, or testifies that she would have never knowingly broken the law or engaged in deceit. "[A]cts both prior and subsequent to the indictment period may be probative of the defendant's state of mind." *Ayers*, 924 F.2d at 1473. When a defendant claims "no knowledge of fraudulent activities, testimony that [s]he subsequently participated in other . . . fraud schemes" is admissible "to show knowledge and intent" and "to rebut the defense of duress." *Id.* (citations omitted).

This evidence was properly noticed and will only become relevant if Chaabani makes certain representations. She has not shown why it would be unduly prejudicial to question her about her own acts and communications with her coconspirator during the period of the charged conspiracy, particularly given that this evidence is relevant for proving her state of mind, which is the core evidentiary dispute. Chaabani's claim that it is unfair to contrast her lifestyle with that of her alleged victims is unsupported. Chaabani's lifestyle during the period charged had no legitimate source of income and is therefore evidence of her motive, intent, and knowledge. For the reasons discussed above, her victims' circumstances are relevant to why Chaabani knew, or should have known, that she was stealing from real people. Her motion to exclude this evidence from use during cross-examination should therefore be denied.

**VIII.  CHAABANI'S LIES ABOUT HER EMPLOYMENT ARE RELEVANT UNDER RULE 608(B)**

Out of an abundance of caution, the United States noticed its intent to introduce evidence of Chaabani's false claim of employment at "Online Pet Supplies" under Rules 404(b) and 608(b). ECF Nos. 23, 24. To be clear, the United States only anticipates introducing this information on cross-examination of Chaabani, should she choose to testify. As noted in the United States' motions *in limine*, inquiry on cross-examination into Chaabani's false statements that she was employed at "Online Pet Supplies," when her banking records show no deposits from any such company, is permissible as a specific instance of Chaabani's conduct probative of her character for untruthfulness. Fed. R. Evid. 608(b); *see Osazuwa*, 564 F.3d at 1175 (holding that Rule 608(b) permits impeachment by specific acts that have not resulted in a criminal conviction). To the extent the United States cross-examines Chaabani on this subject, it will be brief.

**IX.  THE UNITED STATES' CASE PRESENTATION WILL NOT REQUIRE AN ABUNDANCE OF LIMITING INSTRUCTIONS**

Chaabani's "Limiting Instructions Cannot Cure Prejudice" argument is speculative. The United States' presentation of relevant evidence will focus on the elements of the charged offenses and will necessitate few, if any, limiting instructions. As noted above, Chaabani's use of Los Angeles-area ATMs around the time of the offenses is relevant evidence to prove her intent to defraud: because she had no legitimate, non-fraudulent reason to drive two hours south to San Diego, in the middle of the night, to withdraw cash from multiple ATM machines given her awareness of the availability of operational ATM machines nearer to her home that could have saved her the trip. Her access to large cash deposits at the start of each month is evidence of both her involvement in a conspiracy to fraudulently withdraw large amounts of cash at the start of the month, and her agreement to participate in a conspiracy to make these fraudulent withdrawals. Chaabani's lies about her marriage and her employment history, like her purchases of luxury goods using stolen

credit cards, are relevant impeachment evidence if she denies knowledge of the source of the funds she withdrew or makes her credibility an issue for the jury to decide.

## <u>CONCLUSION</u>

For the reasons discuss above, the United States respectfully requests the Court deny Defendant's Rule 12 motions and motions in limine.

DATED: May 14, 2025                    Respectfully submitted,

ADAM GORDON
United States Attorney

/s/*Sabrina L. Fève*
Sabrina L. Fève
Robert J. Miller
Assistant United States Attorneys

*Government's Response in Partial Opposition to
Defendant's Rule 12 Motions and Motions in Limine*                    *24-cr-2713-WQH*