UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAIMA CHAABANI,<br><br>Defendant. | Case No.: 24cr2713-WQH<br><br>**ORDER** |

HAYES, Judge,

The matter before the Court is the Motion to Dismiss the Superseding Indictment, ("Motion to Dismiss"), filed by Defendant Chaima Chaabani. (ECF No. 70.)

**BACKGROUND**

On May 2, 2025, the Government filed the Superseding Indictment in the above-captioned action, charging Chaabani with Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 1), Use and Attempted Use of Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(2) & (b)(2) (Count 2), and Aggravated Identity Theft (Counts 3–6). (ECF No. 63.)

1

On May 13, 2025, Chaabani filed the pending Motion to Dismiss. (ECF No. 70.)[1] Chaabani contends that "[t]he Superseding Indictment does not allege that Chaabani had the intention to 'deceive and cheat,' which is an element of an intent to defraud," and therefore "[t]here is a failure of convergence." *Id*. at 5. Chaabani also contends that "[t]he Superseding Indictment further fails to allege that Chaabani's use of an access device was the crux of the offense, as required for a conviction under 18 U.S.C. § 1029." *Id*. at 6.

On May 14, 2025, the Government filed a response in opposition to the Motion to Dismiss. (ECF No. 74.) The Government contends that the Court "should reject Chaabani's Motion to Dismiss Counts 1 and 2 for not including an express reference to her intent to deceive and cheat," and "'convergence' is inapplicable to access device fraud charges." *Id*. at 5, 6. The Government contends that the Court "should likewise reject Chaabani's argument that Counts 1 and 2 should be dismissed due to 'the absence of allegations establishing the access device as the crux of the offense,'" because "Chaabani again conflates a potential jury instruction with a necessary element," and "a bill of particulars is unnecessary when the indictment alleges sufficient details of the charges and the government provides full discovery." *Id*. at 6–7, 9.

## DISCUSSION

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge." *United States v. Solakyan*, 119 F.4th 575, 590–91 (9th Cir. 2024) (quoting, *inter alia*, *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016)). "In assessing the sufficiency of the indictment, [courts] must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense."

---

[1] To the extent the Motion to Dismiss is untimely, the Court finds good cause for the reasons stated in the Motion to Dismiss (*see* ECF No. 70 at 2). Accordingly, the Court considers the merits of the arguments made in the Motion to Dismiss. *See* Fed. R. Crim. P. 12(c)(3).

*Id*. at 591 (quotation omitted). "The test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id*. (quoting, *inter alia*, *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009)).

In Count 1, charging Conspiracy to Commit Access Device Fraud, the Superseding Indictment alleges:

> Beginning on a date unknown to the grand jury, but not later than December 1, 2023, through and including September 5, 2024, within the Southern District of California, and elsewhere, defendant CHAIMA CHAABANI, and Robert Stoica, charged elsewhere, did knowingly and with intent to defraud conspire with each other and others, to use one and more unauthorized access devices, to wit, Electronic Benefit Transfer account numbers and PINs issued to persons other than themselves and their coconspirators, during a one-year period, and by such conduct obtain cash and other things of value aggregating $1,000 and more during such one-year period, said use affecting interstate and foreign commerce; in violation of Title 18, United States Code, Sections 1029(b)(2), 1029(a)(2), and 1029(c)(1)(A)(i).

(ECF No. 63 ¶ 6.) Count 1 alleges that "[t]he purpose of the conspiracy was to obtain stolen Electronic Benefit Transfer, or 'EBT,' account numbers and PINs assigned to those EBT accounts, and to use that stolen account information to withdraw funds from the accounts without authorization from either the accounts' named beneficiary or the account's issuing authority, within the Southern District of California and elsewhere." *Id*. ¶ 7. Count 1 alleges eight detailed overt acts committed "[i]n furtherance of the conspiracy and to effect its objects." *Id*. ¶ 8.

In Count 2, charging Use and Attempted Use of Unauthorized Access Devices, the Superseding Indictment alleges:

> Between December 1, 2023, and December 3, 2023, within the Southern District of California, defendant CHAIMA CHAABANI did knowingly and with intent to defraud use and attempt to use one and more unauthorized access devices, to wit, Electronic Benefit Transfer account numbers issued to persons other than defendant, during a one-year period, and by such conduct obtain cash and other things of value aggregating $1,000 and more during such one-year period, said use and attempted use affecting interstate and

>foreign commerce; All in violation of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and 1029(c)(1)(A)(i).

*Id.* ¶ 10.

In Counts 3 through 6, each charging Aggravated Identity Theft, the Superseding Indictment alleges that on or about December 1st, 2nd, or 3rd, 2023, within the Southern District of California, Chaabani,

>during and in relation to the felony violations charged in Counts 1 and 2 of this Indictment, knowingly possessed and used, without lawful authority, a means of identification of another person, to wit, the Electronic Benefit Transfer (EBT) account number issued to [a named individual], during a [completed or attempted] financial transaction at a [named] ATM [on or in a named street and/or neighborhood], knowing that the means of identification belonged to another actual person;

>All in violation of Title 18, United States Code, Section 1028A(a)(1).

*Id.* ¶¶ 12, 14, 16, 18.

Chaabani contends that Counts 1 and 2 must be dismissed because "[t]he Superseding Indictment does not allege that Chaabani had the intention to 'deceive and cheat,' which is an element of an intent to defraud," and therefore the Superseding Indictment "fails to allege the required mens rea." (ECF No. 70 at 5–6.) Chaabani relies upon *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) in support of her position that the failure to allege an intention to deceive and cheat requires dismissal of the Superseding Indictment. In *Du Bo*, the indictment failed to recite an essential element of the offense, and the Ninth Circuit held that the "complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Id.* at 1179.

Counts 1 and 2 charge Chaabani with violating 18 U.S.C. § 1029(a)(2) and (b)(2), which states that "[w]hoever … knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period … shall, if the

offense affects interstate or foreign commerce, be punished as provided" elsewhere. 18 U.S.C. § 1029(a)(2); *see* 18 U.S.C. § 1029(b)(2) (providing for penalties to "[w]hoever is a party to a conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense"). The elements of a violation of § 1029(a)(2) are:

> First, the defendant knowingly [used] [trafficked in] the unauthorized access devices at any time during a one-year period [beginning [date], and ending [date]];
>
> Second, by [using] [trafficking in] the unauthorized access devices during that period, the defendant obtained [anything of value worth $1,000 or more] [things of value, their value together totaling $1,000 or more] during that period;
>
> Third, the defendant acted with the intent to defraud; and
>
> Fourth, the defendant's conduct in some way affected commerce between one state and [an]other state[s], or between a state of the United States and a foreign country.

Ninth Cir. Man. of Model Crim. Jury Instr. § 15.11 (2022); *see also United States v. Hanson*, No. CR 09-138 CAS, 2009 WL 2460887, at *3 (C.D. Cal. Aug. 6, 2009) (same).

As quoted above, Counts 1 and 2 of the Superseding Indictment allege each of the elements of a § 1029(a)(2) violation. In *Du Bo*, the indictment was facially deficient because it "fail[ed] to specify the necessary mens rea," which in that case, involving an alleged Hobbs Act violation, was acting "knowingly or willingly." *Du Bo*, 186 F.3d at 1179. By contrast, Counts 1 and 2 allege the proper mens rea element, i.e., that Chaabani acted "knowingly and with the intent to defraud."

Chaabani contends that the Superseding Indictment is deficient because it did not further define the "intent to defraud" element as "an intent to deceive and cheat." In *United States v. Saini*, 23 F.4th 1155 (9th Cir. 2022), the court stated that "the ordinary meaning of 'intent to defraud' under § 1029(a)(3) and (4) requires an intent to deceive and cheat." *Id.* at 1163. The Ninth Circuit held that "the district court's [jury] instruction on *the intent*

*to defraud element* was erroneous, as an intent to defraud under § 1029(a)(3) and (4) requires an intent to deceive and cheat." *Id*. at 1165 (emphasis added); *see also id*. at 1157 (stating that the trial court erroneously "instruct[ed] the jury that "intent to defraud" under 18 U.S.C. § 1029(a)(3) and (4) means an intent to deceive *or* cheat"). *Saini* addressed the issue of a jury instruction defining "the intent to defraud element," and did not address the facial sufficiency of the charging document. Moreover, the Ninth Circuit use of the phrase, "the intent to defraud element," illustrates that the relevant mens rea element is "intent to defraud," which is alleged in Counts 1 and 2 of the Superseding Indictment. *See also United States v. Bailey*, 41 F.3d 413, 418 (9th Cir. 1994) ("[I]ntent to defraud is an element, along with the involvement of an 'access device,' of any violation of 18 U.S.C. § 1029.").

Chaabani also asserts that "[t]he 'deceive and cheat' requirement comes from the idea of convergence." (ECF No. 70 at 5.) In *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989), the court held that, for mail fraud, "the intent must be to obtain money or property from the one who is deceived." *Id*. at 221. The Ninth Circuit later described this as a "convergence between the fraud and the loss." *United States v. Ali*, 620 F.3d 1062, 1070 (9th Cir. 2010). Chaabani points to no authority extending this concept to any of the offenses charged in the Superseding Indictment or holding that convergence must be specifically alleged in a charging document. Accordingly, this argument does not alter the Court's conclusion that Counts 1 and 2 adequately allege the mens rea element.

Finally, Chaabani contends that "[t]he Superseding Indictment further fails to allege that Chaabani's use of an access device was the crux of the offense, as required for a conviction under 18 U.S.C. § 1029." (ECF No. 70 at 6.) Chaabani contends:

> Just as the indictment's failure to allege an intent to "deceive and cheat" renders it defective, the absence of allegations establishing the access device as the crux of the offense similarly warrants dismissal. The lack of specificity deprives Chaabani of notice of the charges and fails to meet constitutional standards under the Fifth and Sixth Amendments.

*Id*. at 7.

In *Dubin v. United States*, 599 U.S. 110 (2023), the Supreme Court held that a defendant commits aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), "when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method." *Dubin*, 599 U.S. at 114. *Dubin* did not address the facial sufficiency of a charging document and Chaabani has pointed to no case holding that a § 1028A charge or a § 1029 charge is facially deficient if it does not contain "crux of the offense" language.

The Ninth Circuit has held that, "[t]o prove a violation of § 1028A, the Government must prove beyond a reasonable doubt that":

1. The defendant knowingly transferred or used a means of identification of another person without legal authority;

2. The defendant knew the means of identification belonged to a real person; and

3. The defendant did so in relation to one of the crimes enumerated in 18 U.S.C. § 1028A(c).

*United States v. Doe*, 842 F.3d 1117, 1119–20 (9th Cir. 2016). Counts 3 through 6 of the Superseding Indictment adequately allege these elements. Moreover, when "look[ing] at the indictment as a whole, includ[ing] facts which are necessarily implied, and constru[ing] it according to common sense," *Solakyan*, 119 F.4th at 591, the Superseding Indictment adequately alleges that Chaabani's use of access devices and misuse of other persons' means of identification "is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature…." *Dubin*, 599 U.S. at 114.

In *Dubin*, the defendant, a manager of a psychological services company, defrauded Medicaid when he overbilled for psychological testing by inflating the credentials of the employee who performed the testing. *See Dubin*, 599 U.S. at 110. The tests themselves were valid and had been performed on the patient named in the claim by the employee named in the claim, but the employee's overstated credentials resulted in a higher rate of reimbursement, which constituted the charged healthcare fraud. In addition to healthcare

fraud, the Government also charged the defendant with aggravated identity theft, because the defendant used the patient's identification when submitting the fraudulent claims. The Court concluded that treating such conduct as identity theft would broaden the statute beyond reasonable bounds, "covering any time another person's means of identification is employed in a way that facilitates the crime." *Id*. at 122.

By contrast, in *United States v. Parviz*, 131 F.4th 966 (9th Cir. 2025), the Ninth Circuit held that the evidence was sufficient to satisfy the *Dubin* standard for an aggravated identity theft conviction involving fraud or deceit. In *Parviz*, the defendant's convictions for making a false statement on a passport application and aggravated identity theft arose from her scheme to kidnap C.P., her biological daughter over whom she had lost her parental rights, and then to take C.P. out of the United States. *See* 131 F.4th at 968–69. In order to obtain C.P.'s passport without presenting C.P. in person (as is normally required by federal regulations), "Parviz presented a fraudulent letter falsely stating that C.P. was immunocompromised, that she required 'emergency travel to the U.K. for medically necessary operations,' and that personally appearing for the passport application 'would pose an unsurmountable risk' to C.P.'s health." *Id*. at 970–71. This letter "purported to be from 'Dr. Bret Allen Barker, DNP, FNP,'" and included Barker's name, National Provider Index number ("NPI"), registered nursing number, and signature. *Id*. at 968. Although Barker, who was romantically involved with Parviz, "minimally" assisted Parviz in drafting the letter, "crucially, the record evidence supports a rational inference that Parviz assembled the letter and forged Barker's signature." *Id*. at 971. The Ninth Circuit stated that, "[o]n this record, a rational trier of fact could find that the use of Barker's 'means of identification'—namely, his name, NPI, and registered nursing number—was central to the fraudulent letter's objective of establishing a medical excuse from the State Department's regulation requiring a minor's personal appearance for a passport application." *Id*. The court stated that, "[f]urther, because Parviz prepared the letter and forged Barker's signature, a rational jury could conclude that there was falsity as to 'who' was making the critical misrepresentations contained in the letter." *Id*. (quoting *Dubin*, 599 U.S. at 132).

The Ninth Circuit concluded that, "the evidence is sufficient to support a finding that Parviz's use of Barker's means of identification was at 'the crux of [her] underlying criminality.'" *Id.* (quoting *Dubin*, 599 U.S. at 122).

The factual allegations in the Superseding Indictment are analogous to those in *Parviz* and stand in contrast to those in *Dubin*. The Superseding Indictment alleges that "[i]n furtherance of the conspiracy and to effect its objects," Chaabani "used and attempted to use stolen EBT account numbers to withdraw cash" on six separate occasions between December 1, 2023, and December 3, 2023. (ECF No. 63 ¶ 8.) The Superseding Indictment alleges that Chaabani, "during and in relation to the felony violations charged in Counts 1 and 2 of this Indictment, knowingly possessed and used, without lawful authority, a means of identification of another person, to wit, the Electronic Benefit Transfer (EBT) account number issued to [a named person], during a financial transaction at a [named bank ATM], knowing that the means of identification belonged to another actual person." *Id.* ¶¶ 12, 14, 16, 18. These allegations are sufficient to allege that Chaabani's unauthorized use of access devices and means of identification, i.e., "Electronic Benefit Transfer account numbers and PINs issued to persons other than [her]sel[f] and [her] coconspirators" *id.* ¶ 6, were at "the crux of [Chaabani's alleged] underlying criminality." *Dubin*, 599 U.S. at 122.

The Court finds that the Superseding Indictment "contains the elements of the charged crime[s] in adequate detail to inform the defendant of the charge[s]," and "it conforms to minimal constitutional standards." *Solakyan*, 119 F.4th at 590–91 (quotation omitted). Accordingly, the Motion to Dismiss is denied.[2]

/ / /

/ / /

/ / /

---

[2] The Motion to Dismiss also contains motions in limine, which were addressed by the Court at the motions in limine hearing on May 21, 2025. (ECF No. 76.) All rulings on the motions in limine made at the hearing are without prejudice to be renewed at trial.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss is denied. (ECF No. 70.)

Dated: June 2, 2025

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court